NOTICE
Decision filed 08/11/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260428-U

NO. 5-26-0428

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 26-CF-152 |
| | ) | |
| KENDALL C. DEGRAVE, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CLARKE delivered the judgment of the court.
Justices Sholar and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motions for relief are affirmed.

¶ 2    The defendant, Kendall C. Degrave, appeals the Jefferson County circuit court's May 5, 2026, order granting the State's petition to deny pretrial release, and the May 13, 2026, denial of her motion for relief. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4    On May 4, 2026, the defendant was charged with unlawful methamphetamine conspiracy, a Class X felony, in that the defendant, with the intent to commit unlawful delivery of methamphetamine (720 ILCS 646/55(a)(1) (West 2024)), agreed with Timothy Kempf and Brianna Pino to deliver a substance containing methamphetamine to Michael Clarida, and that the

1

defendant obtained 100 or more, but less than 400, grams of a substance containing methamphetamine so that delivery could be and was in fact made to Clarida (*id.* § 65(a)). The same day, the State filed a verified petition to detain, alleging that the defendant was charged with a felony for which a sentence of imprisonment was required by law upon conviction, and the defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community.

¶ 5    The circuit court held a hearing on May 5, 2026. The State proceeded by proffer, stating that Deputy Harris, Deputy Mueckenheim, and Detective Johnson of the Jefferson County Sheriff's Department and Detective Hails of the Mt. Vernon Police Department would collectively testify to the following. On May 3, at approximately 11:30 p.m., Harris was notified by Mueckenheim of a suspicious vehicle in the lot of a Huck's gas station in Mt. Vernon, Illinois. Mueckenheim discovered that the vehicle, a white Chevrolet Camaro, was registered to the codefendant Pino, and she had a "cancelled driver's license." Mueckenheim observed a person exiting the Camaro and going to another vehicle, a Sonata, on the other side of the gas station, which then drove around to the back side of the gas station. Harris initially observed the Sonata pull to the edge of the parking lot, but he was unable to position himself behind the vehicle. When the Sonata left, Harris was able to position himself behind the vehicle, where he observed that the Sonata did not have a registration light, which was required by statute, and that the Sonata crossed the fog line on the right side of the roadway. Harris initiated a traffic stop of the Sonata. The driver was Michael Clarida, who displayed "suspicious behavior," including failure to maintain eye contact, shallow breathing, and a noticeable pulse in his chest visible through his clothing.

¶ 6    Clarida exited the vehicle at Harris's request but denied a search of the vehicle. Sergeant Pendley arrived on the scene with his K9 partner, which resulted in a "hit for the presence of

2

narcotics" from the K9. Officers then conducted a search of the vehicle, discovering a large, clear plastic bag with a substance that field tested positive for methamphetamine and weighed 114.7 grams, including the bag.

¶ 7 During Harris's stop of Clarida, Mueckenheim continued to observe the Camaro and initiated a traffic stop to confirm that the driver was the individual with a cancelled license, Pino. The occupants of the vehicle got out, and Pendley's K9 partner conducted a free-air sniff on the Camaro, which resulted in a positive alert. During a search of the Camaro, officers discovered a silver scale and a black scale with a substance on them, which field tested positive for methamphetamine. Officers also discovered brass knuckles in the vehicle.

¶ 8 The occupants of the Camaro were detained and taken to the Jefferson County Justice Center and interviewed. The defendant informed Detective Johnson that she was a passenger in the vehicle. Clarida contacted the defendant about "possible dope sickness." The defendant then contacted codefendant Kempf to get methamphetamine for Clarida. The defendant and Pino purchased methamphetamine while in St. Louis, Missouri, then traveled to Belleville to meet with Kempf, who had a large amount of methamphetamine. Pino then drove the three of them to a Huck's gas station in Mt. Vernon and met with Clarida. The defendant told Johnson that she did exchange the methamphetamine for a few hundred dollars. The defendant consented to a search of her cell phone, which revealed several text messages regarding providing Clarida with "a zip ounce and eight grams of methamphetamine" for $900.

¶ 9 The State asserted that there was a "very strong case" against the defendant and codefendants. The State said that the defendant was charged with a felony offense other than a forcible felony for which a sentence of imprisonment was required upon conviction, and the defendant's pretrial release posed a real and present threat to the community. The State argued that

3

this was "a delivery of a substantial amount of methamphetamine to an individual in our community from sources outside of our community. *** This is a very serious offense." The defendant's criminal history included convictions and Illinois Department of Corrections (IDOC) sentences for possession of methamphetamine and possession of a stolen vehicle. She had five failures to appear in a 2018 Hardin County case. The defendant resided in Belleville with her mother, and had a sister and brother-in-law who lived in Centralia. She also had two children who resided with their father in Cave-In-Rock. The State asked that the defendant be detained as no condition or set of conditions "would [ensure] the safety of [the] community." The State argued that the defendant "formulated" the conspiracy and was "the absolutely most culpable" of the codefendants.

¶ 10    Defense counsel proceeded, first addressing the defendant's mother, Kimberly Degrave, who was present during the hearing. Kimberly stated that the defendant could reside with her in Belleville if she were released on home confinement. Defense counsel then proffered that the defendant was 33 years old, had a GED, and was employed part-time cleaning houses with her mother. The defendant was not on probation, bond, pretrial release, parole, or work release at the time of the offense. No weapons were used in the offense, and there were no injuries. The defendant had two felony charges in her criminal history. Defense counsel asked for the defendant to be released on electronic monitoring and home confinement at her mother's home.

¶ 11    The circuit court stated that it considered the defendant's education, employment, that no weapons or violence were involved, and that the defendant could reside with her mother. The circuit court considered the defendant's criminal history of two felony convictions resulting in IDOC sentences, as well as failures to appear for her cases. The nature of the offense included methamphetamine, which the court called "the most dangerous drug there is." The court said that

4

the defendant "hatched the plot" for the conspiracy as well, according to the State, and there was a "very strong" case against the defendant. The court said the defendant's history and actions did not give the court "a lot of faith in [the defendant's] ability to abide by court orders." The circuit court granted the State's petition to detain the defendant. A written order was entered the same day, ordering the defendant detained because she "delivered methamphetamine to the community from the St[.] Louis area posing a threat to the local community."

¶ 12  On May 8, 2026, defense counsel filed a motion for relief and immediate release. The motion noted that the circuit court found, by clear and convincing evidence, that the proof was evident or presumption great that the defendant committed a qualifying offense, that she posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate the real and present threat. It argued, however, that the circuit court erred in granting the State's petition in that the State failed to meet its burden of proof for all three elements of pretrial detention in that the circuit court failed to fully consider the defendant's ties to the community, her willingness to abide by any terms of pretrial release, her lack of criminal history, her employment opportunities, the fact that no weapon was used in the commission of the alleged offense, and that no injuries resulted from the alleged offense.

¶ 13  The matter proceeded to a hearing on the motion on May 13, 2026. Defense counsel provided the same proffer as at the initial hearing and stated that the circuit court failed to consider the defendant's willingness to abide by any terms of pretrial release, her lack of criminal history, the fact that no weapon was used and no injuries were reported, and the defendant's employment opportunities. Defense counsel asked for the defendant's release with conditions.

5

¶ 14    The State asked the circuit court to take judicial notice of the factual proffer provided during the initial pretrial detention hearing, which it did. The State provided the defendant's criminal history again, and said that the defendant reported being unemployed at the time of her pretrial services report. Further, the defendant did not have ties to the area. The defendant was charged with bringing methamphetamine into the community from St. Louis and was "the leader of this conspiracy." The State said it met its burden of proof and the defendant should remain detained.

¶ 15    The circuit court stated that it considered that the defendant did not have ties to the community and did not have full-time employment. The court also considered that it was not a violent crime; no weapons were used, and no injuries resulted from the offense. Moreover, the court considered that the defendant had a criminal history. The circuit court denied the motion for relief. The defendant appealed.

¶ 16                                II. ANALYSIS

¶ 17    The Office of the State Appellate Defender (OSAD) was appointed to represent the defendant. OSAD filed a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024) on behalf of the defendant. On appeal, the defendant argues that the State failed to prove, by clear and convincing evidence, that the proof was evident or the presumption great that the defendant committed a detainable offense. The defendant does not challenge the fact that the State proved, by clear and convincing evidence, she posed a real and present threat to any person or persons or the community, or that no condition or combination of conditions could mitigate that threat. These issues have thus been abandoned on appeal. See *People v. Drew*, 2024 IL App (5th) 240697, ¶ 21; Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) ("If a memorandum is filed, it must identify which issues from the motion for relief are being advanced on appeal.").

¶ 18    Our standard of review of pretrial release determinations is dependent on whether the circuit court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the circuit court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. The defendant states on appeal this court should apply a manifest weight of the evidence review because the defendant's mother presented live testimony. We do not agree because the defendant's mother was never sworn in as a witness and did not testify to any information pertinent to the defendant's detention. Because the parties provided all evidence by proffer, our review is *de novo*. *Id.*

¶ 19    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the Pretrial Fairness Act. Under article 110 of the Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2024). If the State files a petition requesting denial of pretrial release,

> "the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of [another] person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 7.

7

See 725 ILCS 5/110-6.1(e), (f) (West 2024). Our supreme court has instructed that "[e]vidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12.

¶ 20    The State argues on appeal that the defendant has forfeited this argument for failure to raise the issue in her motion for relief. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024) ("any issue not raised in the motion for relief *** shall be deemed waived"). However, when a memorandum is filed, "it must identify which issues from the motion for relief are being advanced on appeal." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). In the present case, the motion for relief states, in pertinent part, the following:

> "6. Following [the detention] hearing, the Court made the following findings by clear and convincing evidence:
>
>> a. The proof is evident or the presumption great that the defendant has committed a qualifying offense; ***
>
> 7. The Court erred in granting the State's Petition to Deny Pre-Trial Release at said hearing, in that the State failed to meet its burden of proving by clear and convincing evidence *any of the above* in that:
>
>> a. The Court failed to fully consider Defendant's ties to the community.
>>
>> b. The Court failed to fully consider Defendant's willingness to abide by any terms of pre-trial release.
>>
>> c. The Court failed to fully consider Defendant's lack of criminal history.
>>
>> d. The Court failed to fully consider the fact that no weapon was used in the commission of the alleged offense.

8

e. The Court failed to fully consider the fact that no injuries resulted from the alleged offense.

f. The Court failed to fully consider Defendant's employment opportunities." (Emphasis added.)

¶ 21 While not artfully stated, defense counsel did incorporate the argument that the State failed to prove that the proof is evident or presumption great that the defendant committed a detainable offense. The motion for relief on its own would not be sufficient to present the argument on appeal, as the motion did not contain factual detail in support of this argument. See Ill. S. Ct. R. 604(h)(7), (2) (eff. Apr. 15, 2024) (failure to comply with Rule 604(h)(7) by presenting arguments in the motion for relief or memorandum on appeal without "sufficient detail to enable meaningful appellate review" constitutes waiver of the issue on appeal). However, Rule 604(h)(7) permits any issue from the motion for relief to be advanced on appeal, which can then be "supplemented by the memorandum" to "contain sufficient detail to enable meaningful appellate review, including the contention of the appellant and the reasons therefore ***." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). As such, we will review the defendant's argument that the State failed to prove by clear and convincing evidence that the proof is evident or presumption great that she committed a detainable offense.

¶ 22 On appeal, the defendant specifically argues that the State failed to prove there was an actual agreement between the defendant and Pino or Kempf to deliver the charged quantity of methamphetamine to Clarida. Due to the absence of an actual agreement, the defendant contends there was no conspiracy. Further, the weight of the methamphetamine given in the proffer included the weight of the bag, but she contends that the evidence presented established that only 36.25 grams of methamphetamine was purchased, which falls short of the quantity charged.

9

¶ 23    At this stage, the State does not need to prove the defendant's guilt beyond a reasonable doubt. *Stock*, 2023 IL App (1st) 231753, ¶ 13. Instead, the State needs only to show that the proof is evident or the presumption great that the defendant has committed a qualifying offense "by clear and convincing evidence." 725 ILCS 5/110-6.1(e)(1) (West 2024). At the initial pretrial detention hearing, the State proceeded by proffer to present evidence "based upon reliable information." *Id.* § 110-6.1(f)(2).

¶ 24    In this case, the proffered information was based upon law enforcement's report after conducting two traffic stops for Clarida's vehicle and Pino's vehicle, of which the defendant was a passenger. Law enforcement discovered methamphetamine in Clarida's vehicle and methamphetamine residue on scales found in Pino's vehicle. Subsequent interviews with the defendant and codefendants revealed a scheme to obtain methamphetamine from the St. Louis area and Kempf before delivering it to Mt. Vernon. The defendant contacted Kempf about the methamphetamine, and Pino drove the parties during the offense. The codefendants were not merely present during this offense but rather were involved in the agreement to obtain and deliver methamphetamine. See *People v. Melgoza*, 231 Ill. App. 3d 510, 524 (1992) ("The mere presence of the accused at the scene, without more, is insufficient to establish his participation in the conspiracy.").

¶ 25    As to the quantity of the methamphetamine, the weight of the drugs obtained by law enforcement was 114.7 grams, which did include the bag. The defendant argues that the text messages between her and Pino show that she planned to purchase only 36 grams. The proffer established that the defendant obtained methamphetamine from two different sources—in St. Louis and from Kempf—but there is no additional evidence as to how much methamphetamine was actually obtained by the defendant other than the weight described by law enforcement. The

proffer of a law enforcement report was "reliable information" as to the weight of the methamphetamine charged.

¶ 26    The record, as summarized above, shows the reliable information provided by the State to prove, by clear and convincing evidence, that the defendant committed a detainable offense of unlawful methamphetamine conspiracy. The report, facts, and proffer presented sufficiently meet the State's burden of proof. As such, we find that the proof is evident or presumption great that the defendant committed a detainable offense.

¶ 27    The defendant advanced no further argument on appeal; thus, we affirm the circuit court's order granting the State's petition to detain and denying the defendant's motion for relief.

¶ 28                              III. CONCLUSION

¶ 29    Based on the foregoing reasons, we affirm the circuit court's orders of May 5, 2026, and May 13, 2026.


¶ 30    Affirmed.